# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6786 | **DATE** | 3/20/2002 |
| **CASE TITLE** | American National Bank & Trust Co., et al. vs. AXA Client Solutions, LLC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. American National Bank's motion to test the sufficiency of Equitable Life Assurance Society's claims of attorney-client privilege and work-product doctrine as per its third amended privilege log is granted in part and denied in part. Equitable must product documents to American National Bank.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 3/21/2002 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN NATIONAL BANK AND TRUST ) <br> COMPANY OF CHICAGO, as Trustee f/b/o ) <br> Emerald Investments LP and Emerald ) <br> Investments LP, an Illinois partnership, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> AXA CLIENT SOLUTIONS, LLC; THE ) <br> EQUITABLE LIFE ASSURANCE SOCIETY ) <br> OF THE UNITED STATES; and AXA ) <br> FINANCIAL, INC., ) <br> ) <br> Defendants. ) | DOCKETED <br> MAR 2 2 2002 <br><br> Case No. 00 C 6786 <br><br> Judge Charles P. Kocoras <br><br> Magistrate Judge <br> Martin C. Ashman |

## MEMORANDUM OPINION AND ORDER

American National Bank and Trust Company moves this Court to test the sufficiency of Equitable Life Assurance Society's claims of attorney-client privilege and work-product doctrine as per its third amended privilege log. Equitable's privilege log spans 118 pages. We have agreed to conduct an in camera review of every fifteenth document listed on the privilege log, up to a total of ten documents. For the reasons stated, this Court grants American National Bank's motion in part and denies it in part.

## I.

The facts relating to the underlying dispute between the parties have been narrated twice before. *See Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC*, No. 00 C 6786, 2001 WL

743399, at *1 (N.D. Ill. June 29, 2001); *Am. Nat'l Bank & Trust Co. v. AXA Client Solutions, LLC*, No. 00 C 6786, 2001 WL 127653, at *1 (N.D. Ill. Feb. 14, 2001). For purposes of the instant motion, it is enough to say that American National Bank contends that Equitable improperly obstructed American National Bank's right to transfer funds in and out of certain annuity accounts. Time is better spent jumping into the thick of it, discussing the attorney-client privilege and work-product doctrine and then assessing Equitable's basis or bases for withholding the submitted documents from discovery.

The attorney-client privilege protects confidential communications between a client and his legal advisor. It developed as a consideration for the fostering of confidence and trust by the client in his legal advisor so that the legal advisor could provide effective legal advice. *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D. Ill. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). In the Seventh Circuit, the general principle of the attorney-client privilege takes the following form: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). Because the attorney-client privilege impedes the judicial search for truth, it is strictly construed. *In re Walsh*, 623 F.2d 489, 493 (7th Cir. 1980). The party asserting the attorney-client privilege bears the burden of establishing all of its elements on a document-by-document basis. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

The work-product doctrine protects communications between a client and his legal advisor and much that has its source outside of client communications. It developed as a consideration for the maintenance of a certain "degree of privacy" to protect the legal advisor's work so as to promote balance and fairness in the adversarial system. *Upjohn Co.*, 449 U.S. at 397-402; *Hickman v. Taylor*, 329 U.S. 495, 507-12 (1947). In codified form, the work-product doctrine states that "a party may obtain discovery of documents . . . otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). The party asserting the work-product doctrine must prove all of its elements on a document-by-document basis. *Applied Telematics, Inc. v. Sprint Communications Co.*, Civ. A. No. 94-4603, 1996 WL 539595, at *4 (E.D. Pa. Sept. 18, 1996). The threshold determination in any case is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. v. Nat'l Presto Indus.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (quoting 8 Charles Alan Wright et al., Federal Practice and Procedure § 2024, at 343 (2d ed. 1994)).

The first document submitted by Equitable is listed on the privilege log as EQ 7500–EQ 7510. The document was authored by in-house counsel and sent to in-house counsel and an Equitable employee. Equitable described the document as draft letters for brokers regarding warnings for market timing. Equitable claimed that the draft letters were protected against discovery under the attorney-client privilege. We uphold this assertion of the attorney-client privilege,

assuming that the privilege has not been waived. Courts have held that parts of draft letters ultimately disclosed to third parties via the final version of the letter must be disclosed due to waiver. *See Softview Computer Prods. Corp. v. Haworth, Inc.*, No. 97 Civ. 8815 KMWHBP, 2000 WL 351411, at *15 (S.D.N.Y. Mar. 21, 2000) ("Drafts of documents prepared by an attorney for transmission to third parties are protected by the attorney-client privilege only where the draft document contains confidential information communicated by the client to the attorney that is maintained in confidence."); *Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988) ("The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties."). Here, it is apparent that the draft letters contain legal advice and opinions of in-house counsel, and, based on the description of the draft letters on the privilege log, it appears that the draft letters were prepared and kept in confidence.

The second document submitted by Equitable is listed on the privilege log as EQ 7556. The document contains handwritten notes that were authored by in-house counsel. Equitable described the document as a draft letter and the handwritten notes as reflecting legal advice from in-house counsel. Equitable claimed that the handwritten notes were protected against discovery under the attorney-client privilege. We dismiss this assertion of the attorney-client privilege because the handwritten notes were not communicated by in-house counsel to anyone and disclosure of the handwritten notes would not reveal any confidential communication that was made for the purpose of obtaining legal advice. *See Midwestern Univ. v. HBO & Co.*, No. 96 C 2826, 1999 WL 32928, at *4 (N.D. Ill. Jan. 4, 1999); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 6 (N.D. Ill. 1980). The handwritten notes merely reflect in-house counsel's own uncommunicated thoughts, and such recorded and uncommunicated thoughts fall outside the province of the attorney-client privilege.

- 4 -

The third document submitted by Equitable is listed on the privilege log as EQ 7631–EQ 7665. The document was authored by in-house counsel and sent to in-house counsel and two Equitable employees. Equitable described the document as draft letters to customers regarding market timing and dated the draft letters September 2000. Equitable claimed that the draft letters were protected against discovery under the attorney-client privilege and work-product doctrine. We find that the draft letters are protected against discovery under the attorney-client privilege, assuming that the privilege has not been waived. *See Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Schenet*, 678 F. Supp. at 1284. The draft letters contain legal advice and opinions of in-house counsel and it appears, based on the description of the draft letters on the privilege log, that the draft letters were prepared and kept in confidence. We find that the draft letters are not protected against discovery under the work-product doctrine because the draft letters were not prepared in anticipation of litigation. The motivation for preparing the draft letters was to assist Equitable in managing its business, which is shown by the content of the letters. These templates would have likely been prepared regardless of whether any litigation was expected to ensue. *See Hardy v. N.Y. News Inc.*, 114 F.R.D. 633, 646 (S.D.N.Y. 1987).

The fourth document submitted by Equitable is listed on the privilege log as EQ 7762–EQ 7763. The document contains two e-mails. One of the e-mails, dated March 9, 2000, was authored by an Equitable employee and sent to in-house counsel and several Equitable employees. The other e-mail, dated March 7, 2000, was also authored by an Equitable employee and sent to in-house counsel and several Equitable employees. Equitable described the document as e-mails concerning possible actions that Equitable might take in response to market timing. Equitable claimed that both e-mails were protected against discovery under the attorney-client privilege. We disagree with this

assertion, but agree that the part of the first sentence in the last paragraph beginning with "and" and ending with "change" is protected against discovery under the attorney-client privilege. Disclosure of this part of the March 7 e-mail would reveal a confidential communication that was made for the purpose of obtaining legal advice. In the corporate context, it is well settled that the privileged nature of a communication does not lose its status as such simply because it is disseminated among numerous employees of the corporation. *See McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995). It is equally settled, however, that a communication is not necessarily privileged because the communication was sent to an attorney. *United States Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994). Accordingly, the rest of the document, which reveals communications made by Equitable employees for the purpose of obtaining business advice, must be disclosed.

The fifth document submitted by Equitable is listed on the privilege log as EQ 7809–EQ 7810. The document contains four e-mails. One of the e-mails, dated March 15, 2000, was authored by in-house counsel and sent to in-house counsel and two Equitable employees. Another e-mail, dated March 15, 2000, was authored by an Equitable employee and sent to another Equitable employee. The other two e-mails, dated March 21, 2000, were authored by the same Equitable employee and sent to in-house counsel and three Equitable employees. Equitable described the document as four e-mails relating to changing addresses for contract holders. Equitable claimed that the e-mails were protected against discovery under the attorney-client privilege. We uphold this assertion of the privilege because the e-mails contain communications that were made for the purpose of obtaining or providing legal advice. *See United States v. Rowe*, 96 F.3d 1294, 1296-97

(9th Cir. 1996). Particularly, in-house counsel was in the process of obtaining information necessary to provide legal advice. *See Upjohn Co.*, 449 U.S. at 390-91.

The sixth document submitted by Equitable is listed on the privilege log as EQ 7865. The document was authored by in-house counsel and sent to an Equitable employee. Equitable described the document as a handwritten memorandum and claimed that it was protected against discovery under the attorney-client privilege. We dismiss this assertion of the privilege because the content of the handwritten memorandum does not reveal any confidential communication that was made for the purpose of obtaining legal advice. The handwritten memorandum merely reports in one sentence the content of the attached document that was delivered to the Equitable employee, akin to a cover letter containing a terse description of the transmittal. *See Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 428 (E.D.N.C. 1991). It appears that in-house counsel delivered the attached document on his own account, rather than in response to a request.

The seventh document submitted by Equitable is listed on the privilege log as EQ 7994–EQ 7995. The document contains four e-mails. One of the e-mails, dated June 21, 2000, was authored by an Equitable employee and sent to in-house counsel and two Equitable employees. The second e-mail, dated June 22, 2000, was authored by in-house counsel and sent to in-house counsel and three Equitable employees. The third e-mail, also dated June 22, 2000, was authored by an Equitable employee and sent to in-house counsel and two Equitable employees. Lastly, the fourth e-mail, dated June 26, 2000, was authored by in-house counsel and sent to in-house counsel and three Equitable employees. Equitable described the document as e-mails reflecting correspondence with counsel regarding contract language on market timing. Equitable claimed that the e-mails were protected against discovery under the attorney-client privilege. We find that the communication contained in

the June 21 e-mail is protected against discovery under the attorney-client privilege because it was made for the purpose of obtaining legal advice. *See Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999) ("A client's specific request to an attorney and pertinent information related thereto fall within the reaches of the privilege."). We find that the communication contained in the June 22 e-mail from in-house counsel is protected against discovery under the attorney-client privilege, assuming that the privilege has not been waived, because the communication contains legal advice and opinions of in-house counsel and it appears, based on the description of the e-mail on the privilege log, that the communication was prepared and kept in confidence. *See Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Schenet*, 678 F. Supp. at 1284. The communication contained in the June 22 e-mail from the Equitable employee is protected against disclosure under the attorney-client privilege because it was made for the purpose of obtaining legal advice. And lastly, the communication contained in the June 26 e-mail is protected against discovery under the attorney-client privilege, assuming that the privilege has not been waived, because the communication contains legal advice and opinions of in-house counsel and it appears, based on the description of the e-mail on the privilege log, that the communication was prepared and kept in confidence. *See Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Schenet*, 678 F. Supp. at 1284.

The eighth document submitted by Equitable is listed on the privilege log as EQ 8066. The document was authored by in-house counsel and sent to in-house counsel and several Equitable employees. It contains a handwritten note written by in-house counsel. Equitable described the document as an e-mail with a handwritten note concerning proposed market timing language. Equitable claimed that the e-mail and handwritten note were protected against discovery under the

attorney-client privilege. We uphold this assertion of the privilege with respect to the e-mail itself, assuming that the privilege has not been waived. *See Softview Computer Prods. Corp.*, 2000 WL 351411, at *15; *Schenet*, 678 F. Supp. at 1284. The e-mail contains legal advice and opinions of in-house counsel and it appears, based on the description of the e-mail on the privilege log, that the e-mail was prepared and kept in confidence. However, we dismiss this assertion of the privilege with respect to the handwritten notes because the handwritten notes were not communicated by in-house counsel to anyone and disclosure of the handwritten notes would not reveal any confidential communication that was made for the purpose of obtaining legal advice. *See Midwestern Univ.*, 1999 WL 32928, at *4; *Sneider*, 91 F.R.D. at 6. The handwritten notes merely reflect in-house counsel's own uncommunicated thoughts, and such recorded and uncommunicated thoughts fall outside the province of the attorney-client privilege.

The ninth document submitted by Equitable is listed on the privilege log as EQ 8126–EQ 8127. The document was authored by in-house counsel and sent to in-house counsel. Equitable described the document as a legal memorandum concerning changes to transfer rules. Equitable claimed that the document was protected against discovery under the attorney-client privilege. We uphold this assertion of the privilege because disclosure of the legal memorandum would reveal confidential communications that were made for the purpose of obtaining legal advice. *See N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986) ("Legal memoranda which summarize case law but contain no factual application to the client do not contain confidential client information and are thus not privileged."); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 523 (D. Conn. 1976) ("Of course, the attorney's opinions and legal theories, even if

recorded in his own files, are privileged under the narrow standard of *United Shoe* if they reveal information supplied in confidence by the client.").

Finally, the tenth document submitted by Equitable is listed on the privilege log as EQ 8200. The document was authored by in-house counsel and sent to in-house counsel and two Equitable employees. Equitable described the document as an e-mail providing legal advice regarding market timing sales agreements. Equitable claimed that the document was protected against discovery under the attorney-client privilege. We uphold this assertion of the privilege because the e-mail contains legal advice and opinions of in-house counsel.

## II.

For the reasons stated, this Court grants American National Bank's motion in part and denies it in part. Equitable must produce documents to American National Bank as stated above.

**ENTER ORDER:**

_[signature]_

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** March 20, 2002.