
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6786 | **DATE** | 5/24/2002 |
| **CASE TITLE** | American National Bank, et al. vs. AXA Client Solutions, LLC, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff Emerald's motion for sanctions is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 8 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 153 |
| | Mail AO 450 form. | | | |
| ✓ | Copy to judge/magistrate judge. | | 5/24/2002 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee f/b/o EMERALD INVESTMENTS LP, and EMERALD INVESTMENTS LP, an Illinois Partnership, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 00 C 6786 |
| v. | ) ) | Judge Charles P. Kocoras |
| AXA CLIENT SOLUTIONS, LLC; THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES; and AXA FINANCIAL, INC., | ) ) ) ) ) | Magistrate Judge Martin C. Ashman |
| Defendants. | ) | |

MAY 28 2002

## MEMORANDUM OPINION AND ORDER

Emerald Investments LP seeks sanctions against the Equitable Life Assurance Society of the United States pursuant to Federal Rule of Civil Procedure 37(b) for violating an Agreed Amended Protective Order. For the following reasons, we hold that Equitable has violated the Agreed Amended Protective Order and award Emerald an amount equal to the attorney's fees and expenses that Emerald has incurred as a result of the investigation into this dispute. In addition, Equitable should immediately provide Emerald with a copy of the executed agreement of confidentiality of the third employee as required by the terms of the protective order and the agreement worked out between the parties in November 2001.

153

# I.

This lawsuit involves a claim for breach of contract, namely, whether Emerald had the right to utilize its trading strategy with its Equitable account. *See Am. Nat'l Bank & Trust Co. of Chi. v. AXA Client Solutions, LLC*, No. 00 C 6786, 2001 WL 127653, at *1-3 (N.D. Ill. Feb. 14, 2001). To restrict the dissemination of documents pertaining to Emerald's trading strategy and other confidential matters, this Court entered a protective order on October 17, 2001, to which the parties stipulated. The protective order permitted the party responding to discovery to designate as confidential or highly confidential any documents, information, or material that it believed contained "proprietary information, trade secrets, confidential research, financial, commercial, or sensitive information, including but not limited to proprietary financial, technical, or marketing information, or other proprietary business information, the disclosure of which would tend to cause substantial harm to the responding [party's] legitimate business or privacy interests, or the privacy interests of the responding [party's] employees or customers." (Emerald's Trial Br. Ex. B at 2.) The designation of any document, information, or material as confidential or highly confidential under the terms of the protective order constituted the verification of counsel for the party producing the documents that the documents were reviewed for compliance with the criteria of the protective order, and that the designation of confidential or highly confidential was, in the good faith judgment of counsel, consistent with the terms of the protective order. (*Id.* at 3.) The protective order provided that material designated as confidential or highly confidential could be used by persons other than the responding party only for the purpose of preparing for and conducting pretrial, trial, and appellate proceedings in the underlying lawsuit. (*Id.*) Counsel for each party was required to take reasonable precautions

necessary to prevent the unauthorized or inadvertent disclosure of confidential or highly confidential information. If such information were disclosed to any person other than in the manner authorized by the protective order, then the party responsible for the disclosure would be required to immediately bring all of the pertinent facts relating to the disclosure to the attention of the parties and make every effort to prevent further disclosure by the person who received the information. (*Id.* at 3-4.) Prior to any individual receiving possession of confidential material, counsel for the party receiving the material was required to cause the individual to execute a confidentiality agreement. (*Id.* at 7-8.)

Under the terms of the protective order, one party could object to the other party's designation of information as confidential or highly confidential. The objecting party was to state the objection by letter to counsel for the party making the designation. If the parties could not resolve the dispute on their own, then either party could seek relief from the court. (*Id.* at 4.) Until an objection to the designation of a document had been resolved by agreement of counsel or by the court, the document remained designated as confidential or highly confidential, as the case may be, and subject to the protective order. (*Id.*) Nothing in the protective order affected the responding party's obligation to demonstrate good cause in the event of any dispute. (*Id.*)

Immediately after entry of the protective order, Emerald delivered approximately 170,000 documents to Equitable for review. Emerald initially designated all of the documents as highly confidential. (Emerald's Trial Br. at 7 n.3; Equitable's Br. Opp'n at 14.)

In November 2001, Equitable took the depositions of two Emerald employees and asked them questions based on information contained in Emerald's highly confidential documents pertaining to the relationship between Emerald and other entities trading with Equitable

accounts. (Emerald's Mot. Entry Finding Rule 37 Violation at 4.) Within days of taking both depositions, Equitable sent a letter to Elkhorn, LLC—an entity revealed in Emerald's highly confidential documents as being related to DH2, Inc. and Emerald, and as using the same trading strategy as DH2 and Emerald—in which Equitable threatened to cease providing services to Elkhorn because of its disruptive trading activities.

Concerned that Equitable was using information designated by Emerald as highly confidential for business purposes unrelated to the lawsuit, Emerald filed a Motion for Entry of a Finding of a Rule 37 Violation on December 10, 2001. This Court provided Emerald with the opportunity to conduct limited discovery while briefing took place.

It came to light that on October 24, 2001, Eileen Stassa, an Equitable in-house attorney, sent an e-mail to Ken Kozlowski, an Equitable employee charged with detecting market timing violations: "Ken, can you find out why we haven't sent market timing letters to these folks. Thanks." The e-mail was titled *Market Timing for contract 300680435/99681077*. A message forwarded with the e-mail indicated that contract 300680435 belonged to Elkhorn and contract 99681077 belonged to DH2. (Emerald's Trial Br. Ex. F.) Stassa learned the information contained in the e-mail from Equitable's outside counsel, who learned the information through a review of the highly confidential documents produced by Emerald. (Equitable's Resp. at 8.) At the time, Stassa and Equitable's outside counsel were entitled to receive and review highly confidential information under the terms of the protective order, but Kozlowski was not. Also, on November 19, 2001, Stassa sent an e-mail to Kozlowski: "Ken, can you tell me whether these two Emerald related accounts have violated our market timing policy and whether we sent any notices to them (99681077 and 300680435)? Thanks." (Emerald's Trial Br. Ex. G.) The e-mail

was titled *DH2*—the common manager of Emerald and Elkhorn. Like the October 24 e-mail, Stassa learned the information contained in the November 19 e-mail from Equitable's outside counsel, who learned the information through a review of the highly confidential documents produced by Emerald. (Equitable's Resp. at 8.) Lastly, on February 6, 2002, Equitable revealed that in November 2001 James O'Boyle and James Niepoky, two Equitable employees who were not entitled to receive and review highly confidential information under the terms of the protective order, learned highly confidential information from someone, possibly Stassa. (Emerald's Reply Trial Br. Ex. K; Stassa Dep. at 104-05.) As Equitable employees, O'Boyle and Niepoky played a role in detecting market timing violations by the owners of Equitable accounts.

Unsurprisingly Emerald used all of this newly acquired information to augment its original motion for sanctions. Emerald now argues that Equitable violated the protective order by virtue of Stassa's e-mails to Kozlowski, someone's disclosure of highly confidential information to O'Boyle and Niepoky, and Equitable's use of highly confidential information for business purposes—i.e., to stop Elkhorn from using its trading strategy with its Equitable account. Emerald contends that Equitable's counsel's failure to have certain individuals timely execute confidentiality agreements and that Equitable's counsel's failure to promptly come forward with information surrounding violations of the protective order according to the terms of the protective order constitute grounds for sanctions as well. Equitable maintains that Emerald's motion for sanctions should be denied because the disclosed information was not subject to the protective order and because Emerald did not use the disclosed information for business purposes.

## II.

Generally speaking, parties to a lawsuit may disseminate information obtained through discovery as they see fit. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Upon entry of a protective order under Rule 26(c), however, this is no longer the case. Dissemination becomes controlled by the terms of the protective order and the parties must comply with the terms of the protective order or subject themselves to possible sanctions. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("[A]ll orders . . . of courts must be complied with promptly."); *Krynicki v. Falk*, 983 F.2d 74, 78 (7th Cir. 1992) ("The confidentiality order is effective until modified . . . ."); *Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1137-45 (N.D. Ill. 1995).

First, we find that Equitable has violated the protective order by improperly disseminating information that Emerald designated as highly confidential. It is not disputed that Stassa learned the information contained in the October 24 and November 19 e-mails solely from documents that Emerald designated as highly confidential.[1] And it is not disputed that Kozlowski had no right to receive and review information designated by Emerald as highly confidential. In the October 24 e-mail Stassa informed Kozlowski, at least implicitly, that Stassa possessed information showing that Elkhorn and DH2 were engaging in market timing or had engaged in market timing, and in the November 19 e-mail Stassa iterated that information and notified Kozlowski that Elkhorn and DH2 were "Emerald related accounts." The phrase "market timing" coupled with the phrase "Emerald related accounts" bears special significance since in July 2000 Equitable, and presumably Kozlowski in particular, determined that Emerald was engaging in

---

[1] The exact documents remain unknown.

market timing due to its "disruptive trading strategy." In effect, through her e-mails, Stassa notified Kozlowski that Elkhorn and DH2 were using or had used the same disruptive trading strategy as Emerald, and that, in light of this relatedness, Elkhorn and DH2 should have received market timing letters. The dissemination of this information about relatedness, apparently obtainable only through a review of Emerald's highly confidential trading and financial records, was improper under the terms of the protective order.[2] With respect to O'Boyle and Niepoky, Equitable admits that O'Boyle and Niepoky learned information designated by Emerald as highly confidential and that O'Boyle and Niepoky were not permitted to receive and review such information. In light of this, nothing more must be proven by Emerald to show that a violation of the protective order occurred.

Next, we find convincing Emerald's argument that Equitable used information designated by Emerald as highly confidential for purposes unrelated to the defense of this lawsuit. In the October 24 e-mail, after receiving and reviewing information designated by Emerald as highly confidential, Stassa asked, "Ken, can you find out *why* we haven't sent market timing letters to [Elkhorn and DH2]." (Emerald's Trial Br. Ex. F (emphasis added).) This language does not support Equitable's explanation that the purpose of Stassa's inquiry was to ascertain whether Equitable had sent *a* market timing letter to Elkhorn or DH2 that affected Elkhorn's or DH2's

---

[2] Accordingly, we find that Stassa disseminated more than simply public information about Emerald, Elkhorn, and DH2 through the e-mails—more than, for example, that Elkhorn and Emerald had a similar business manager in DH2. We know of no information in the public domain or in Equitable's possession (prior to receiving Emerald's highly confidential trading and financial records) that revealed the related trading strategy of Elkhorn, DH2, and Emerald. We note that Equitable has not contested the confidential nature of Emerald's trading and financial records, nor has it refuted Emerald's assertion that the source of information disseminated by Stassa was Emerald's highly confidential trading and financial records. (*See* Equitable's Br. Opp'n at 10; Emerald's Reply Trial Br. at 2-4.)

trading activities for purposes of damage analysis.³ (Tr. Oral Argument 4/22/02, at 44-45; Stassa Dep. at 84.) Indeed, prior to sending the e-mail, Stassa knew that neither Elkhorn nor DH2 had received a market timing letter. (Emerald's Trial Br. Ex. F.) Then, on November 19 Stassa repeats the market timing inquiry and reveals that Elkhorn and DH2 were "Emerald related accounts," the significance of which, coupled with the market timing inquiry, is explained above. In our opinion, the language of the e-mails, Kozlowski's role at Equitable as the initiator of market timing letters, Stassa's belief that as a result of the e-mails Kozlowski would analyze Elkhorn's and DH2's accounts, and Stassa's belief that Kozlowski would send market timing letters to Elkhorn and DH2 if he discovered disruptive trading after analyzing Elkhorn's and DH2's accounts establish by clear and convincing evidence that Stassa used information designated by Emerald as highly confidential for purposes unrelated to the defense of this lawsuit in violation of the protective order.⁴ The same evidence, particularly the language of the e-mails, establishes that Stassa's "damages analysis" explanation is not credible.

On November 1, 2001, Emerald agreed not to object to Equitable's dissemination of highly confidential information to three of Equitable's employees provided that Equitable's counsel delivered copies of the employees' executed agreements of confidentiality. (Emerald's Reply Supp. Mot. Entry Finding Rule 37 Violation Ex. L.) The agreements of confidentiality

---

³ Elkhorn, DH2, and Emerald used the same trading strategy. According to Equitable, if Elkhorn's or DH2's trading activities were affected by a market timing letter, then Equitable might not have been able to use Elkhorn's or DH2's trading activities to assess Emerald's damages in this lawsuit. (Tr. Oral Argument 4/22/02, at 44-45.)

⁴ As the party moving for sanctions, Emerald had the burden of proving by a preponderance of the evidence that Equitable violated the protective order. *See Gordy Co. v. Mary Jane Girls, Inc.*, Nos. 86 CIV. 6814 (RWS), 87 CIV. 3438 (RWS), 1989 WL 28477, at *8 (S.D.N.Y. Mar. 24, 1989).

were supposed to be executed prior to the employees' receiving highly confidential information pursuant to the terms of the protective order. According to Emerald, Equitable's counsel delivered two of the executed agreements on December 12, 2001, the date on which Emerald filed its original motion for sanctions, but Equitable's counsel has not delivered the third. Emerald claims that this amounts to a violation of the protective order. (Tr. Oral Argument 4/22/02, at 35.)

Equitable's counsel provided no response to this argument in the briefs or at the April 22 oral argument. For example, Equitable's counsel has not argued that the third employee never received information designated by Emerald as highly confidential or that the third employee actually executed an agreement of confidentiality prior to receiving the highly confidential information. Under these circumstances, we find that Equitable's counsel violated the protective order. *See Williams v. Nat'l Hous. Exch., Inc.*, 110 F. Supp. 2d 694, 699 (N.D. Ill. 2000). We dismiss, however, Emerald's assertion that, besides Equitable's counsel's failure to explain the missing agreement of confidentiality, Equitable's counsel violated the protective order by not meeting their obligation to "come forward with all pertinent facts [surrounding the motion for sanctions]." (Tr. Oral Argument 4/22/02, at 39.) Equitable's counsel has volunteered a good deal of information during these proceedings and, as a whole, their positions have been reasonable.

The appropriate sanction for Equitable's violations of the protective order is for Equitable to pay to Emerald an amount equal to the attorney's fees and expenses that Emerald has incurred as a result of the investigation into this dispute. *See* Fed. R. Civ. P. 37(b). Emerald's concern that Equitable was violating the protective order was justified due to the suspicious timing between Emerald's October 2001 disclosure and Equitable's market timing letter to Elkhorn. As

it turned out, Emerald's reasonable investigation into this matter proved most of what it had suspected. This sanction should persuade Equitable to take its obligations under the protective order more seriously for the remainder of this lawsuit. It also gives warning to Equitable that any further violations of the protective order will result in harsher consequences. Additionally, Equitable should immediately provide Emerald with a copy of the executed agreement of confidentiality of the third employee as required by the terms of the protective order and the agreement worked out between the parties in November 2001. Equitable's delay in delivering the agreement is inexcusable. We refuse, however, to enjoin Equitable from interfering with the trading of Elkhorn because Emerald has not established a sufficient link between Equitable's violations of the protective order and Equitable's actions toward Elkhorn. Initially it appeared that Stassa's e-mails triggered the sending of the market timing letter to Elkhorn considering, among other things, that Elkhorn had previously never received a market timing letter and that Elkhorn had previously engaged in market timing. However, Equitable has shown that it was aware of Elkhorn's disruptive trading activities in August 2000—prior to Emerald's filing of this lawsuit. And in January 2001, Equitable warned Elkhorn to discontinue market timing via a telephone call. (Equitable's Br. Opp'n at 3.) Thus, Elkhorn was within Equitable's radar prior to any involvement of Stassa. Elkhorn engaged in market timing in March 2001, October 2001, and November 2001 (*id.* at 4), but Elkhorn did not trade at all from June 2001 through September 2001 and did not engage in market timing in February 2001, April 2001, and May 2001. (Emerald's Trial Br. Ex. F; Kozlowski's Aff. ¶ 16.) This affects the persuasive force of Emerald's assertion that nine months passed (from February 2001 until November 2001)

without any action by Equitable. Equitable had no reason to send a market timing letter to Elkhorn in seven of those nine months.

Although on October 24 Stassa asked, "Ken, can you find out why we haven't sent market timing letters to these folks?" there is no evidence that Kozlowski responded verbally or by taking any specific action. By November 16, 2001, Kozlowski, on his own, identified Elkhorn and thirteen other accounts as potentially engaging in market timing. On November 19, Stassa asked, "Ken, can you tell me whether these two Emerald related accounts have violated our market timing policy and whether we sent any notices to them ([DH2] and [Elkhorn])?" Kozlowski responded, "Attached is the latest batch of timers who are slated to get initial or 'cut off' letters. The first policy listed *matched* the one you gave to me. This policy was active in May and stopped until October. It violated the policy twice in the last two weeks. We will be sending an initial warning. [The other policy you gave me] violated [the policy] once during this time." (Emerald's Trial Br. Ex. H (emphasis added).) We agree with Equitable that the language of Kozlowski's response militates against a finding that the content of Stassa's e-mails caused Kozlowski to send the market timing letter to Elkhorn. So does Kozlowski's deposition testimony, in which Kozlowski indicated that Stassa's e-mails did not have anything to do with Kozlowski's decision to send Elkhorn the market timing letter. Further evidence militating against Emerald's position comes from the fact that Elkhorn and not DH2 received a market timing letter. If Stassa caused Kozlowski to send out the market timing letter to Elkhorn, then it would seem that DH2 should have received a market timing letter, too.

Consequently, we find that the suggested cause and effect between Stassa's e-mails and the market timing letter sent to Elkhorn has not been proven by Emerald. Put another way, the

- 11 -

evidence shows that Elkhorn's November 2001 trading activities and not Stassa's e-mails triggered Equitable to send the market timing letter to Elkhorn. Therefore, we will not exercise our discretion in favor of enjoining Equitable from interfering with Elkhorn's trading activities.

We have not overlooked the many pages of Equitable's briefs that are devoted to attacking the validity of Emerald's designation of some of the documents delivered in October 2001 as highly confidential.[5] We advise Equitable that if it wants to object to documents that Emerald has designated as confidential or highly confidential, then Equitable should avail itself of the specific procedures agreed to in the protective order and identify to Emerald or the court, as the case may be, the documents that Equitable believes do not fall within the scope of the protective order. Equitable's talk about Emerald's purported abuses of the protective order cannot excuse Equitable's own violations of the protective order. Just as one party cannot disregard its discovery obligations due to the other party's breach of its discovery obligations, we believe that one party's violations of a protective order cannot excuse the violations of the other. Both parties should pay a price for violating an order of the court.

Briefly, we comment on Equitable's citation to *Citizens First National Bank of Princeton v. Cincinnati Insurance Co.*, 178 F.3d 943 (7th Cir. 1999), to make clear that this Court is cognizant of its duty under Rule 26(c) to make a finding of good cause before entering a protective order, as well as its duty to subsequently modify the protective order if circumstances so require. In a case involving thousands of documents, such as this one, the court need not

---

[5] Although Emerald initially designated all of the documents delivered in October 2001 as highly confidential, Emerald de-designated some of the documents upon the request of Equitable. Equitable currently complains about the designation of documents that Emerald has refused to de-designate. (*See* Equitable's Br. Opp'n at 14-15.)

make a finding of good cause on a document-by-document basis. *Id.* at 946; *David J. Frank Landscape Contracting, Inc. v. La Rosa Landscape*, 199 F.R.D. 314, 315 (E.D. Wis. 2001). A threshold finding of good cause is sufficient provided that the protective order covers properly demarcated categories of confidential information, makes explicit that either party can object to the other party's designation of documents as confidential, and the court is satisfied that the parties are acting in good faith in designating information as confidential. *Citizens First National Bank of Princeton*, 178 F.3d at 946; *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 166-67 (3d Cir. 1993); *David J. Frank Landscape Contracting, Inc.*, 199 F.R.D. at 315. On October 17 such a threshold finding was made. (*See* Standing Order at 3-4; Equitable's Br. Opp'n Ex. 19 at 2-7.) Based on the allegations and evidence presently before us, we cannot say that any aspect of the protective order was in error or calls for modification.

### III.

For the reasons stated, we grant Emerald's motion for sanctions in part and deny it in part. Equitable is hereby ordered to pay to Emerald an amount equal to the attorney's fees and expenses that Emerald has incurred as a result of the investigation into this dispute. In addition, Equitable should immediately provide Emerald with a copy of the executed agreement of

confidentiality of the third employee as required by the terms of the protective order and the agreement worked out between the parties in November 2001.

**ENTER ORDER:**

**Dated:** May 24, 2002.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Copies have been mailed to:

| | |
|---|---|
| CHARLES S. BERGEN, Esq.<br>GEORGE R. DOUGHERTY, Esq.<br>MATTHEW O. SITZER, Esq.<br>Grippo & Elden<br>227 West Monroe Street<br>Suite 3600<br>Chicago, IL  60606<br><br>Attorneys for Plaintiffs | STEVEN S. SCHOLES, Esq.<br>PAUL E. CHRONIS, Esq.<br>JEFFREY A. ROSSMAN, Esq.<br>McDermott Will & Emery<br>227 West Monroe Street<br>Suite 4400<br>Chicago, IL  60606<br><br>Attorney for Defendant |