# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6786 | **DATE** | 8/9/2002 |
| **CASE TITLE** | American Natl Bank & Trust vs. AXA Client Solutions et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendant Equitable Life Assurance Society of the United States' objection to Judge Ashman's Opinion and Order, and Emerald's motion (Doc 167-1) for additional relief, are denied. Having reviewed the record in this case, we are not left with a firm conviction that Judge Ashman made any clearly erroneous decisions or made any decisions that were contrary to law. As such, we affirm his Opinion and Order in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 1 2 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 192 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to Magistrate Judge Ashman. | | | |
| SCT | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN NATIONAL BANK AND TRUST )
COMPANY OF CHICAGO as Trustee f/b/o )
Emerald Investments LP, and EMERALD )
INVESTMENTS LP, an Illinois partnership, )
)
Plaintiffs, )
)
vs. ) 00 C 6786
)
AXA CLIENT SOLUTIONS, LLC; THE )
EQUITABLE LIFE ASSURANCE SOCIETY OF )
THE UNITED STATES; and AXA FINANCIAL, )
INC., )
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the court are two motions, each challenging the May 24, 2002 Memorandum Opinion and Order of Magistrate Judge Ashman ("Judge Ashman's Opinion and Order"). Defendant Equitable Life Assurance Society of the United States ("Equitable") objects to Judge Ashman's Opinion and Order virtually in its entirety. Plaintiff American National Bank and Trust Company of Chicago, as Trustee f/b/o Emerald Investment, LP, and Emerald Investments, LP ("Emerald") objects that Judge Ashman's Opinion and Order does not provide adequate relief and, accordingly, Emerald has moved for Additional Relief Pursuant to Judge Ashman's Opinion and Order.

The factual background of this case is set forth in the numerous previous opinions issued in this litigation and in Judge Ashman's Opinion and Order, and we do not repeat it here. We only briefly summarize the facts and findings relating to Judge Ashman's Opinion and Order. On

October 17, 2001, Judge Ashman entered a Protective Order in this case to restrict the dissemination of documents pertaining to Emerald's trading strategy and other confidential matters. On December 10, 2001, Emerald filed a motion for Entry of a Finding of a Rule 37 Violation before Judge Ashman. Emerald's motion was based on its belief that Equitable had, in violation of the Protective Order, used information Emerald had designated as highly confidential for business purposes unrelated to this lawsuit. This belief, in turn, was based on the fact that just days after deposing two Emerald employees with questions based on information taken from Emerald's highly confidential documents in November 2001, Equitable sent a letter to Elkhorn, LLC ("Elkhorn") threatening to cease providing services to Elkhorn because of Elkhorn's disruptive trading activities. Elkhorn is an entity related to Emerald. Elkhorn and Emerald are managed by DH2. All entities use the same related trading strategy, a fact contained in the documents Emerald had designated as highly confidential.

Judge Ashman subsequently allowed Emerald to conduct limited discovery on its motion, and Emerald's discovery revealed other pertinent facts. In sum, both on October 24, 2001 and November 19, 2001, Eileen Stassa ("Stassa"), an Equitable in-house attorney, e-mailed Ken Kozlowski ("Kozlowski"), an Equitable employee who was responsible with detecting market timing violations, and asked him whether two Emerald related accounts, Elkhorn and DH2, were market timing and why these entities had not been sent market timing notices. Stassa learned the information upon which her e-mails were based were from one of Equitable's outside attorneys who, in turn, learned the information after reviewing Emerald's highly confidential documents. Kozlowski was not one of the individuals who was entitled to receive and review highly confidential information under the terms of the Protective Order. Additionally, on February 6, 2002, Equitable

revealed that in November 2001 James O'Boyle ("O'Boyle") and James Niepoky ("Niepoky") learned highly confidential information from someone, possibly Stassa. O'Boyle and Niepoky were Equitable employees and assisted in detecting market timing violations by the owners of Equitable accounts. Like Kozlowski, they were not entitled to receive and review highly confidential information under the terms of the Protective Order. Emerald charged that these new facts constituted additional violations of the Protective Order by Equitable. Emerald further contended that Equitable's attorneys' failure to have certain persons timely execute confidentiality agreements and that Equitable's attorneys' failure to promptly come forward with information about the violations also called for sanctions. Equitable objected to Emerald's motion in its entirety.

After reviewing all of the evidence before him, Judge Ashman granted in part and denied in part Emerald's motion. Judge Ashman found that Equitable violated the Protective Order by improperly disseminating information which Emerald had designated as highly confidential. He noted that Equitable had not disputed that Stassa learned the information contained in her e-mails solely from Emerald's highly confidential documents. He further concluded that Stassa's dissemination of this information, which linked Elkhorn and DH2 to the same trading strategy employed by Emerald, was improper under the Protective Order. Judge Ashman further found that Equitable admitted that O'Boyle and Niepoky were not permitted to receive and review the highly confidential information they were made privy to. In addition, Judge Ashman concluded that there was clear and convincing evidence that Equitable had used information designated as highly confidential for purposes unrelated to Equitable's defense of this lawsuit. Judge Ashman specifically discredited the alternative purpose of Stassa's e-mails advanced by Equitable: that Stassa was attempting to acquire information needed for assessing Emerald's damages.

Judge Ashman also found in favor of Emerald with regard to another alleged violation of the Protective Order by Equitable. On November 21, 2001, Emerald agreed not to object to Equitable's dissemination of highly confidential information to three Equitable employees provided that Equitable's counsel deliver copies of the employees' executed agreements of confidentiality. Such agreements were, pursuant to the terms of the Protective Order, to be executed prior to the employees' receipt of the information. Emerald informed the court that Equitable's counsel delivered two of the executed agreements on December 12, 2001 (the date Emerald filed its original motion for sanctions) but Equitable's counsel had not delivered the third agreement. Judge Ashman found Equitable's response to this argument insufficient and, accordingly, ordered Equitable to submit the third employee's executed agreement to Emerald immediately.

Although finding that the evidence supported most of Emerald's allegations, Judge Ashman did not find that the evidence supported Emerald's contention that Equitable's counsel violated the Protective Order because Equitable's counsel did not meet their obligation thereunder to come forth with all pertinent facts surrounding Emerald's motion for sanctions. Judge Ashman dismissed this argument because he concluded that Equitable's counsel had volunteered a significant amount of information during the proceedings and that their positions had been reasonable.

Judge Ashman found that the appropriate sanction was for Equitable to pay Emerald the amount equal to the attorneys' fees and expenses Emerald incurred investigating the dispute. He further ordered Equitable to immediately provide Emerald with a copy of the executed confidentiality agreement of the third employee. However, Judge Ashman declined to permanently enjoin Equitable from interfering with Elkhorn's trading because Emerald had not established a sufficient link between Equitable's violations of the Protective Order and Equitable's actions toward

Elkhorn. Judge Ashman found that Equitable showed it was aware of Elkhorn's disruptive trading activities in August 2000 and that Equitable warned Elkhorn to discontinue market timing in January 2001. He further concluded that Elkhorn's disruptive trading activities in November 2001, and not Stassa's improper dissemination of highly confidential information, triggered Kozlowski to independently send the market timing letter to Elkhorn. Having summarized Judge Ashman's Opinion and Order, we now note the standard against which we review his findings.

Judge Ashman has ruled on a non-dispositive matter and, as such, his ruling may only be reversed if it is clearly erroneous or contrary to law. Fed. R. Civ. Pro. 72(a); Weeks v. Samsung Heavy Indus. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1994); Sparks Tune-Up Centers, Inc. v. Strong, 1994 U.S. Dist. LEXIS 6246, at *5 (N.D. Ill. May 11, 1994) (stating clearly erroneous standard applies to magistrate's decision as to imposition of sanctions). Under this standard, a district court can reverse a magistrate judge's ruling "only if the district court is left with the definite and firm conviction that a mistake has been made." Weeks, 126 F.3d at 943. Applying this deferential standard, we carefully review the parties' arguments, Judge Ashman's Opinion and Order, and the record in this case.

We begin with Equitable's objections. Equitable asserts that Judge Ashman's conclusion that Equitable used highly confidential information for business purposes is inconsistent with his conclusion that Stassa's e-mails did not trigger the market timing letter sent by Kozlowski, and that this inconsistency supports that Equitable did not use the information for an impermissible purpose. Thus, Equitable contends Judge Ashman's conclusions are clearly erroneous. We disagree. Equitable has intertwined two separate, independent findings. The first issue was whether Stassa disseminated the highly confidential information for an impermissible purpose not related to this litigation. The evidence – the language of the e-mails, the timing of the e-mails, the deposition

- 5 -

testimony – supports Judge Ashman's conclusion that Stassa disseminated highly confidential information for a purpose not related to this litigation. We do not agree with Equitable that the evidence in the record only supports a finding that Stassa sent Kozlowski those e-mails to obtain information for a damages analysis. Judge Ashman could and did discredit her testimony on this point in light of clear and convincing testimony indicating otherwise. Given that there is support in the record for Judge Ashman's conclusion and given that his decision implicated a credibility determination, we do not find that it was clearly erroneous. See, e.g., In re Grand Jury Proceedings, 280 F.3d 1103, 1109 (7th Cir. 2002) (instructing credibility determinations can almost never be clear error).

The second issue was whether Stassa's e-mails caused Equitable to send Elkhorn a market timing notice so that permanently enjoining Equitable from interfering with Elkhorn and DH2's business was warranted. The evidence on this issue similarly supports Judge Ashman's conclusion that such broad relief was not warranted because Kozlowski's decision to send a market timing letter to Elkhorn was not sufficiently connected to Stassa's violation of the Protective Order. Both findings are therefore supported by the evidence.

Moreover, these two findings are independent of each other. The fact that Stassa's e-mails may not have triggered Kozlowski's decision does not undo Judge Ashman's conclusion that Stassa sent those e-mails for an impermissible purpose. Similarly, that Equitable knew of Elkhorn's activities prior to Stassa's e-mail does not in any way prove that Stassa was not motivated by a business purpose. Stassa's dissemination of highly confidential information may not have been the actual cause of Kozlowski's business decision, but that does not mean her dissemination of that information was not motivated by a business purpose. Accordingly, we find that neither of these findings constitute clear error as they are independently supported by the record and as they are not inconsistent with one another.

Equitable also makes much of how the information disclosed by Stassa was not highly confidential – and thus not subject to the Protective Order – in the first instance. Judge Ashman noted this argument and instructed Equitable to challenge Emerald's designation of this information as highly confidential separately. He did not think that the fact Equitable challenged the designation entitled Equitable to disclose the information. We agree. The Protective Order provides for challenges to a party's designation of documents as protected. As provided in the Protective Order, "[u]ntil an objection to the designation of a document has been resolved by agreement of counsel or by order of the Court, the document shall be treated as 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL' and subject to this Order." Protective Order ¶5. Equitable could have challenged the designation upon receipt of the documents it claims were improperly designated. Equitable can still bring such a challenge. But Equitable cannot justify or excuse its own violation of the Protective Order with allegations that Emerald also violated the same order. The fact remains that Emerald had designated the documents as highly confidential and that Equitable itself admitted it received the information from these documents. No objection to Emerald's designation of the information at issue had been resolved by counsel or by Judge Ashman at the time Equitable disseminated it. This moots Equitable's argument that the information was not actually highly confidential. Whether it was or not is not relevant when the Protective Order agreed to by the parties provides it will be treated according to its designation until and unless such designation is disputed and the dispute is resolved.

In a related argument, Equitable contends that the information that was disseminated was not subject to the Protective Order because it was information that Equitable could have obtained from sources other than the discovery in this litigation, i.e., its own internal records and public documents. Equitable's argument depends on its narrow characterization of the information at issue in this case. Equitable asserts that the information only conveyed that Emerald was related to Elkhorn and DH2.

Judge Ashman did not conclude so. As explained by Judge Ashman, the information that was disseminated did not merely indicate the companies were related in some abstract manner. Rather, it indicated that the companies shared a *related* trading strategy. This is information that Equitable was not privy to before receiving the documents Emerald had designated as highly confidential, and Equitable has admitted as much both in its previous presentation to this court in support of adding new claims and defenses and in its papers before Judge Ashman. Nor does, as Equitable apparently argues, the fact that Equitable may have known about earlier disruptive trading practices by Elkhorn mean it already knew about the entities' *related* trading strategy. Judge Ashman's interpretation of the information Equitable impermissibly conveyed is not clearly erroneous based on the record.

Equitable next disputes Judge Ashman's finding that Equitable violated the Protective Order by not providing Emerald with Stanley Tulin's ("Tulin") executed confidentiality agreement. Emerald had agreed not to object to Equitable's dissemination of highly confidential information to three Equitable employees, including Tulin, provided Equitable's attorneys deliver copies of these employees' signed confidentiality agreements. Equitable delivered the signed agreements of the other two employees, but not Tulin's. Judge Ashman found this conduct violated the Protective Order. Equitable now argues that Judge Ashman's conclusion should be overturned because only individuals who actually receive protected information are required to sign a confidentiality agreement and Tulin did not receive such information. Furthermore, Equitable argues there was no final agreement providing delivery of these agreements.

Equitable's arguments do not persuade us that Judge Ashman's conclusion was clearly erroneous. That Equitable agreed to provide confidentiality agreements by these three employees, including Tulin, is made clear by an Equitable attorney's e-mail to Emerald's counsel confirming as much. The parties only disputed the description of the documents to be covered by the agreement. Additionally, we find Equitable's argument that it did not deliver Tulin's executed argument because

it was not obligated to since Tulin did not receive confidential information unpersuasive. Equitable similarly asserted that the other two employees did not receive any such information (Def. Resp. to Pl.'s Rule 37 Mot. at 7); (Def.'s Objections to J. Ashman's Opinion and Order, Ex. 16 at 23), yet Equitable nonetheless obtained and provided their signed confidentiality agreements. This greatly diminishes the persuasive value of Equitable's argument that it did not have to provide Tulin's agreement because he did not receive protected information. Based on the record before him, it was not clearly erroneous for Judge Ashman to order Equitable to deliver Tulin's signed confidentiality agreement. The fact that Equitable informed Judge Ashman that Tulin specifically did not receive protected information does not undo the end result. We add that, although not in the record before Judge Ashman, Equitable now informs this court that Tulin executed the confidentiality agreement in December 2001. We find that the fact that Tulin signed this agreement indicates Equitable believed he was, like the other employees who signed it, obligated to do so. Accordingly, Judge Ashman's order that Equitable deliver Tulin's executed agreement stands.

Finally, Equitable argues that Judge Ashman's sanction is excessive. Equitable's argument is largely based on the argument we addressed above: that Judge Ashman's finding that Stassa had a business purpose in disseminating confidential information is inconsistent with Judge Ashman's conclusion that her e-mail did not cause Kozlowski to send the market timing notice to Elkhorn. For the reasons stated above, we do not find this result inconsistent. Additionally, that Judge Ashman ultimately concluded that Equitable's violations did not actually cause Equitable to send Elkhorn the notice, does not mean that Emerald was not justified in suspecting that the information was disseminated for a business purpose. Judge Ashman's conclusion that Emerald's suspicion was reasonable is not clearly erroneous based on the record. Furthermore, the fact that Stassa was unaware of the confidential nature of the information does not excuse the violation. Accordingly, we find that the sanction imposed by Judge Ashman was reasonable. Cohn v. Taco Bell Corp., 1995

U.S. Dist. LEXIS 12645, at *25-28 (N.D. Ill. Aug. 29, 1995) (stating sanctions should be proportional to the conduct giving rise to the motion for sanctions); Rule 37(b)(2).

We now turn to Emerald's objection. Unsurprisingly, Emerald argues the opposite of Equitable: that Judge Ashman's Opinion and Order is sound but that the sanction imposed by Judge Ashman does not sufficiently cure the harm caused by Equitable's violations of the Protective Order. Specifically, Emerald requests this court to make Judge Ashman's interim order prohibiting Equitable from interfering with Elkhorn's and DH2's trading permanent. We decline to do so. As discussed above, Judge Ashman found that the connection between Equitable's letter to Elkhorn and Equitable's violations of the Protective Order were not connected so as to warrant the broad injunctive relief sought by Emerald. Having reviewed that evidence, we agree with Judge Ashman's conclusion. We also cannot award Emerald its requested relief based on the other alleged abuses of the discovery process by Equitable; Emerald cannot lump these alleged discovery abuses together to then ask for expansive, unrelated and permanent injunctive relief. Accordingly, we do not modify Judge Ashman's Opinion and Order to add the additional relief requested by Emerald.

In sum, having reviewed the record in this case, we are not left with a firm conviction that Judge Ashman made any clearly erroneous decisions or made any decisions that were contrary to law. As such, we affirm his Opinion and Order in its entirety.

*Charles P. Kocoras*

Charles P. Kocoras
Chief Judge, United States District Court

Dated: August 9, 2002